UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SMITHKLINE BEECHAM CORP. d/b/a GLAXOSMITHKLINE,** : | Civil Action No. 03-2158 (MLC) |
| Plaintiff, : | MEMORANDUM OPINION |
| v. : | |
| **RANBAXY LABORATORIES, LTD. and RANBAXY PHARMACEUTICALS, INC.** : | |
| Defendants. : | |

**HUGHES, U.S.M.J**

This matter having come before the Court upon Motion by Defendants Ranbaxy Laboratories, LTD. and Ranbaxy Pharmaceuticals, Inc. ("Defendants") for Clarification of the Court's Scheduling Order [Docket Entry #99], returnable December 5, 2006, to determine whether or not Defendants are permitted to submit new expert reports and test results, which were commissioned after the close of discovery. Plaintiff Smithkline Beecham Corp. d/b/a Glaxosmithkline ("Plaintiff") submitted opposition to the Motion, pointing to the Court's Scheduling Order which required all fact discovery be completed by July 31, 2004 and all expert discovery be completed by April 8, 2005. The Court considered the submissions of the parties and conducted oral argument on January 30, 2006. For the reasons stated below, Defendants' Motion for Clarification of the Court's Scheduling Order to allow additional test results is denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

In May 2003, Plaintiff filed a Complaint against Defendants alleging willful infringement of United States Patent No. 4,957,924 ("the '924 patent"), pursuant to 35 U.S.C. § 100 et seq.

[Docket Entry #1]. On July 15, 2003, Defendants filed its answer and counterclaims [Docket Entry #24]. Shortly thereafter, on July 17, 2003, the first Scheduling Order was entered [Docket Entry #21], setting the deadlines for discovery. Over the next two years, the Court extended discovery eight (8) times (*See* Docket Entry #'s 27, 33, 34, 38, 52, 57, 61 and 77). By consent of the parties, expert discovery, including depositions, was to finally conclude no later than April 8, 2005.

After the end of discovery on April 8, 2005, but prior the Court's September 20, 2006 Order to replace Defendants' expert, Defendants commissioned a new independent expert report on the (hereinafter the "Seres Report"). This report contained test results on racemization, a theory put forth in Plaintiff's expert report, but not contemplated in Defendants' original expert report.

While discovery was scheduled to end no later than April 8, 2005, the Court allowed Defendants to substitute their expert and submit a new expert report after the deadline when it became apparent that Defendants' expert was incapacitated (the relevant proceedings have been filed under seal to protect the expert's reputation) (*See* Docket Entry #89**]**. However, the Court stated on the record of September 16, 2005, that any substituted expert report could not deviate from the findings in the original report by offering a new opinion. In addition, the Court also stated that any new opinions must be "essentially the same" as those offered by Defendants original expert.

As a result of the Court's order allowing an expert substitution, Defendants retained Dr. Hannessian to prepare a new report. Dr. Hannessian subsequently filed his report, expressing basically the same opinions put forth by Defendants' original expert. However, in

subsequent months, and at the request of counsel, he began conducting his own tests on the issue of racemization, a theory addressed in Plaintiff's expert report, but never previously addressed by Defendants. During his deposition, Dr. Hannessian stated that he stopped his testing when he "was told by counsel that the experiment would have to be postponed or interrupted." (*See* Exhibit B, Deposition Transcript of Dr. Hannessian at 51-54). Dr. Hannessian stated that he did not rely on this testing when rendering the substitute expert opinion. *Id.* At oral argument, Defense counsel stated that testing was interrupted because they realized the additional testing may not comply with the Court's final Scheduling Order and the Order Substituting Defendants' original expert.

Thus, Defendants filed the present motion [Docket Entry #99] for a clarification of the Court's October 4, 2004 scheduling order [Docket Entry #77] to determine whether they could submit the Seres Report and whether Dr. Hannessian could continue his testing and/or submit the test results achieved thus far. Defendants claim that such tests are permissible as they would be used only to rebut the new racemization theory put forth in Plaintiff's expert report.

## II.     DISCUSSION

With this Motion, Defendants seek to rely on new expert reports which were commissioned after the close of discovery, by seeking a clarification of the Court's October 4, 2006 Scheduling Order. They claim that good cause exists, pursuant to Fed. R. Civ. P. 16, to allow them to do so, and that Plaintiff will not be prejudiced by such use. Plaintiff argues that the Scheduling Order does not allow for "a third round" of testing and reports, and that Defendants must be held to the deadlines set forth in that final Scheduling Order. For the reasons stated below, this Court finds that any expert reports commissioned after the close of discovery

on April 8, 2005 may not be used by either party in this case.

     A.     **Amending Scheduling Orders - Good Cause**

Defendants claim that there is good cause to amend the scheduling order because it does not address the issue of impeachment evidence, which they deem their new reports constitute. Plaintiff claims that the Scheduling Order is clear and Defendants have not demonstrated good cause to deviate from that Order. For the reasons stated below, the Court finds that no good cause exists to amend the final Scheduling Order.

To amend a court's scheduling order, the moving party must demonstrate good cause. FED. R. CIV. P. 16. In the present case, Defendants commissioned additional testing on reacemization to bolster their initial expert's opinion, *after* conclusion of all expert discovery including depositions. Defendants then concealed those test results (Seres Report) during their various applications to the Court, seeking the Court to allow them to a substitute their initial expert due to the expert's incapacitation. Once Defendants retained a new expert, they attempted to use the Seres Report to bolster the new expert's opinion. The test results in the Seres Report, which address racemization, are clearly outside the scope of Defendants' initial Expert report. This is particularly problematic because the Order, which allowed Defendants to replace their expert, specifically stated that the new expert report should be "essentially the same" as the original expert report. In addition, the Court stated on the record, at the September 16, 2005 oral argument on Defendants' Motion to Substitute its expert, that any subsequent expert report could not deviate from the findings in the original report by offering a new opinion. That is exactly what the Seres Report does and Defendants have not demonstrated good cause which would allow the Court to permit consideration of it. In contrast, good cause might exist if Plaintiff's

expert had used test results to bolster his opinion. Then, the Court might have allowed Defendants to use test results to create a level playing field. However, this is not the case.

Dr. Hannessian's report suffers from the same defects; mainly, that it was commissioned after the close of discovery, and more significantly, after the substitution of Defendants' expert, when Defendants were advised that no new opinions would be accepted. Dr. Hannessian's testing on the racemization issue occurred in late 2005, well after the April 8, 2005 discovery deadline. As with the Seres Report, Defendants cannot demonstrate good cause why the Scheduling Order should be amended to allow use of Dr. Hannessian's test results, which is clearly outside the scope of Defendants' initial expert report.

Without good cause, the Court cannot permit the use of additional expert reports in this case. Therefore, Defendants are prohibited from using the Seres Report and Dr. Hannessian's test results.

### B. Excluding witness testimony - Pennypack Analysis

Defendants also claim that their request to use the Seres Report and Dr. Hannessian's test results should be granted because excluding them would be inappropriate under a *Pennypack*[1] analysis. Plaintiff claims that not only will it be prejudiced by the submission of the reports, but that Defendants exhibited bad faith in concealing the results during their Motion to substitute their original expert. The Court notes that while Defendants current motion is properly decided solely under a FED. R. CIV. P. 16 analysis, it finds that Defendants' claims also fail under a *Pennypack* analysis.

In deciding whether to exclude witness testimony a court must consider the following

---

[1] *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894 (3d. Cir. 1977).

5

factors: "1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, 2) the ability of that party to cure the prejudice, 3) the extent to which waiver fo the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and 4) bad faith or willfulness in failing to comply with the district court's order." *Pennypack,* 559 F.2d at 905-06. In the present case, the factors do not weigh in Defendants' favor, and the new reports and test results must be excluded.

Defendants suffer from a number of problems under *Pennypack*. First, Defendants did not disclose the Seres test results, addressing racemization, prior to Defendants' Motion to substitute their expert. During oral argument for the present Motion, Defense Counsel stated that they commissioned the Seres testing after the close of discovery, but were in possession of the results, and the final report, prior to oral argument on the Motion to substitute their expert. Withholding the fact that new test results existed, while arguing that substitution was necessary due to incapacitation of their expert, and agreeing that any new report would be "essentially the same" as the initial report, is an indication of bad faith by Defendants. Further, commissioning a new study by the substituted expert on issues not originally raised in the expert report also signals bad faith. The Court was quite specific with its instruction that any substituted expert report would offer "essentially the same" information as the prior report and that substitution was allowed because the original expert was incapacitated. Allowing the late substitution of Defendants' expert was not a license to commission new reports on new theories not previously contemplated by their original expert.

Further, Plaintiff will be seriously prejudiced by the introduction of new test results. Parties must be able to rely on scheduling orders for the effective and efficient management of

6

discovery. In the present case, the scheduling order was amended eight times. As of the final discovery deadline on April 8, 2005, neither party moved to have it amended for the ninth time. Adhering to final scheduling order is particularly important when dealing with expert discovery in patent cases, which must be done in an orderly fashion so as not to incur duplicate costs due to additional testing. In addition, allowing unexpected or new discovery after the deadline for doing so passes, puts the parties at risk of being unfairly surprised. As is the case here, Defendants would be producing new test results outside of the discovery deadline, after agreeing to limit the scope of their new expert's report to those opinions expressed by their first expert, prior to the discovery deadline. The Court finds that allowing additional reports on new opinions would unduly prejudice the parties and would disrupt the orderly and efficient trial of the case.

Furthermore, Defendants cannot reasonably cure this prejudice. Defendants argue that any prejudice to Plaintiff can easily be cured by allowing Plaintiff to conduct additional testing in response to the Seres and Hannessian test results. However, discovery has long since ended, the parties are about to go to trial, and any additional testing by Plaintiffs, to cure the prejudice, would basically restart discovery and delay an already protracted dispute. Given the above, Defendants proposed "cure" cannot be considered appropriate.

For the reasons stated above, the Court finds that even under a *Pennypack* analysis, Defendants' request to use new test results, commissioned after the close of discovery, must be denied.

### C. Rebuttal Reports

Defendants third argument is that the new report and testing results will only be used to rebut Plaintiff's racemization claims, should Plaintiff raise them. Plaintiff argues that

Defendants inappropriately classify the reports as rebuttal evidence, when in fact they address a new theory of the case, which Defendants previously overlooked. Rebuttal testimony is allowed when the rebuttal evidence is intended "solely to contradict or rebut" other expert testimony. FED. R. CIV. P. 26(a)(2)(C). The Court notes that rebuttal testimony is "limited 'to that which is precisely direct to rebutting new matter or new theories presented by the defendant's case-in-chief.'" *Crowley v. Chiat*, 322 F. Supp. 2d 530, 551 (D.N.J. 2005) (quoting *Step-Saver Data Sys. v. Wyse Tech.*, 752 F. Supp. 181, 193 (E.D. Pa. 1990)). Further, rebuttal testimony is not "an opportunity for the correction of any oversights in the plaintiff's case in chief." *Id.* (quoting *Step-Saver,* 752 F. Supp at 193)). In the present case, Defendants' requests to submit a new expert report, or new test results, after the close of expert discovery, would allow Defendants the opportunity to attempt to correct an apparent oversight in their original expert report, mainly, the issue of racemization. While the above rule does not "automatically exclude anything an expert could have included in his or her original report," *id,* it does exclude testimony attempting to correct omission or oversight by the moving party. Allowing Defendants to utilize the Seres Report or Dr. Hannessian's results would do just that, allow Defendants to correct an apparent oversight in their original opinion.

### III.   CONCLUSION

Given the above, Defendants have failed to demonstrate good cause under FED. R. CIV. P. 16, to allow use of new expert reports, which were commissioned after the close of discovery. In addition, allowing the use of the new reports would seriously prejudice Plaintiff, who relied on the scheduling order to conduct the necessary discovery. Further, Defendants' use of the Seres Report thus far, indicates bad faith on the part of Defendants. Not only did Defendants

commission this test after the close of discovery, they were aware of the results and had the report during their appearance before the Court when they argued their Motion to replace their initial expert, and did not disclose it to the Court.  Defendants agreed that their substituted expert would not submit a report which deviated from that of its original expert, yet that is exactly what the new reports do.  Finally, the Seres Report and Dr. Hannessian's test results cannot be construed as rebuttal testimony; they are being used to correct an apparent oversight in Defendants' original expert report.

     For the reasons stated above, Defendants' Motion for Clarification of the Court's Scheduling Order to allow Defendants to use additional expert Reports, both the Seres Report and Dr. Hannessian's testing results, is denied.  An appropriate order accompanies this opinion.

       /s/ *John J. Hughes*
      **JOHN J. HUGHES**
      **UNITED STATES MAGISTRATE JUDGE**

DATED: February 22, 2006